# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE FOLGER COFFEE COMPANY | CIVIL ACTION |
| VERSUS | NO. 08-1630 |
| INTERNATIONAL UNION, ET AL | SECTION: "C"(3) |

## OPINION[1]

This matter comes before the Court on the plaintiff The Folger Coffee Company's Action to Vacate the Arbitration Award entered by Arbitrator Diane Massey on January 21, 2008. (Rec. Doc. 33). The plaintiff contends that the arbitration decision should be vacated because it conflicts with the express terms of the collective bargaining agreement between the plaintiff and the defendants International Union, United Automobile, Aerospace & Agricultural Implement Workers of America and its local union, Local No. 1805. *Id.* This action is brought under Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §185. Trial on the briefs and evidence was held on December 15, 2008. After considering the parties' briefs, supporting exhibits, and the applicable law, the Court hereby finds in favor of the defendants for the following reasons.

I. Background

Many of the relevant facts are stipulated. The plaintiff is an Ohio corporation and operates a plant located in New Orleans, Louisiana. (Rec. Doc. 29, ¶¶ 7a & 7b). The plaintiff is

---

[1] Daniel Lai, a third year student at Tulane Law School, assisted in the research and preparation of this decision.

an employer in an industry affecting commerce within the meaning of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. §101 et seq. *Id.* at ¶ 7a. The defendants International Union, United Automobile, Aerospace & Agricultural Implement Workers of America and its local union, Local No. 1805 are labor organizations representing employees in an industry affecting commerce within the meaning of the LMRA, and collectively represent the New Orleans plant's production and maintenance workers as the certified collective bargaining representative. *Id.* at ¶¶ 7c & 7d. The plaintiff is party to a series of collective bargaining agreements with the defendants, including a collective bargaining agreement effective May 30, 2002 through May 29, 2005 (hereinafter "2002-2005 CBA") and a collective bargaining agreement effective September 18, 2006 through September 17, 2009 (hereinafter "2006-2009 CBA"). *Id.* at ¶¶ 7e, 7f & 7g.

In early 2003 the plaintiff began a conversion from metal to plastic coffee containers, whereby the plaintiff stopped using translucent pliable plastic caps and began to use harder plastic caps that fit onto plastic coffee containers. Bench Book Joint Exhibit "A" at 2-3. The capper operator, which is a position that is included in the bargaining unit (as represented by the defendants), was responsible for dumping boxes of translucent pliable plastic caps into a pre-feeder approximately every fifteen minutes. *Id.* The capper operator would engage in other tasks related to the job in between the intervals of cap dumping. *Id.* As a result of the conversion from metal to plastic coffee containers, the plaintiff installed new equipment called a bulk overcapper to process the new harder plastic caps with the intent that this work would be done by the capper operator. *Id.* Various problems with the new equipment and changes in production arose. *Id.* The plaintiff thereby figured out that each box had to contain fewer caps, and therefore capper operators had to dump boxes of caps approximately every five minutes instead. *Id.* This meant

that capper operators had no time within the five minute intervals to perform the other capper operator functions. *Id.* The frequency of the cap dumping meant that the work had become repetitive and unskilled, and the plaintiff determined that the work did not fit with its high performance works system (HPWS) concept. *Id.* The plaintiff thereby determined that this work should be subcontracted. *Id.*

The high performance works system (HPWS) concept was negotiated with the defendants back in 1987, and aimed to upgrade the skills of the workforce so that bargaining unit workers would learn more tasks and skills and thereby be paid with higher wages. *Id.* The defendants grieved the subcontracting of the capper dumper work as violations of Articles I, II, XII and XIII of the collective bargaining agreement and submitted the dispute to arbitration. *Id.* The parties agreed that the merits of the dispute were governed by the 2002-2005 CBA while the arbitration procedures were governed by the 2006-2009 CBA. *Id.*

II. The Arbitrator's Decision

The plaintiff and the defendants stipulated to the following issue at the arbitration hearing:

> Did the Company violate the 2002-2005 Collective Bargaining Agreement by outsourcing and/or subcontracting the Roast and Ground cap dumping work, and has the continued outsourcing/or subcontracting of said work violated said Collective Bargaining Agreement or any subsequent Collective Bargaining Agreement?

*Id.* at 2.

The arbitrator Diane Massey sustained the grievance and determined that the plaintiff did violate the 2002-2005 CBA by outsourcing and/or subcontracting the cap dumping work and that the continued outsourcing and/or subcontracting of said work violates the 2002-2005 CBA or any subsequent collective bargaining agreement. *Id.* at 20. The arbitrator thereby ordered that the

cap dumping task be assigned back to bargaining unit employees. *Id.* The plaintiff has petitioned this Court to vacate the arbitration award.

III. Law and Analysis

Suits for violation of contracts between an employer and a labor organization may be brought in any district court of the United States having jurisdiction of the parties. 29 U.S.C. § 185(a). The Court's jurisdiction includes the review of arbitrator's decisions, but its role is a limited one in light of the strong national policy favoring arbitration of labor disputes as a means of promoting harmony in labor-management relations and peaceful settlement of labor disputes. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 566-67 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960); *United Steelworkers of America v. Enterprise Wheel & Gas Corp.*, 363 U.S. 593, 596-97 (1960). The courts should not generally engage in plenary review of the merits of an arbitrator's award, but they do have a duty to determine whether the arbitrator properly exercised jurisdiction over the dispute. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562-63 (1976). An arbitrator's jurisdiction is drawn from and circumscribed by the arbitration clause in the collective bargaining agreement between the parties, and the arbitrator can bind them only on issues which they have contractually agreed to submit to him. *See New Orleans Steamship Association v. General Longshore Workers, Etc.*, 626 F.2d 455, 467 (5th Cir. 1980). Whether the arbitrator has properly exercised that jurisdiction within the bounds of a particular contract is a question for judicial determination. *Id.*

> As recently stated by the United States Court of Appeals for the Fifth Circuit:
>
> Judicial review of arbitration awards is extremely limited. As long as the arbitrator's decision "draws its essence from the collective bargaining agreement" and the arbitrator is not fashioning "his own brand of industrial justice," the award cannot be set aside.

*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, (1987) (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

*Weber Aircraft Inc. v. General Warehousemen and Helpers Union Local 767*, 253 F.3d 821, 824 (5th Cir. 2001). Indeed, "courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Assoc. v. Garvey*, 532 U.S. 504, 509 (2001). "Even when the arbitrator's award may properly be vacated, the appropriate remedy is to remand the case for further arbitration proceedings, *Misco*, supra, at 40, n. 10, 108 S. Ct. 364." *Garvey*, 532 U.S. at 511.

In its trial brief, the plaintiff contends that Arbitrator Massey "exceeded her authority by implicitly amending the contract's express terms" when she ignored the clear language of the relevant contractual provisions and utilized extraneous considerations in making the decision. (Rec. Doc. 33, at 6). In particular, the plaintiff believes that Arbitrator Massey included issues relating to "whether the outsourcing decisions violated other arbitrators' decisions" and "any concern for the 'permanency' of the jobs in the bargaining unit." (Rec. Doc. 33, at 10-11). The plaintiff thereby argues that Arbitrator Massey went beyond the stipulated issue by discussing these issues.

Interestingly, Arbitrator Massey indicated that "both Parties relied on prior arbitration awards to offer guidance to this Arbitrator." Bench Book Joint Exhibit "A" at 11. Clearly, Arbitrator Massey referred to prior arbitral decisions in order to help determine whether the plaintiff violated the 2002-2005 CBA. For example, the Court notes that Arbitrator Massey spoke about a "concern for the permanency of the jobs in the bargaining unit" not as an end in itself, but as a factor to determine whether the plaintiff's subcontracting decision subverted or

weakened the bargaining unit. *Id.* at 18.

Indeed, the plaintiff argued *at the arbitration hearing* that its subcontracting decision was a good faith business decision and did not "subvert or negatively impact the bargaining unit." Bench Book Joint Exhibit "A" at 7. This was based on plaintiff's understanding of the arbitral history, where "[i]n the absence of contract language allowing it, arbitrators generally allow subcontracting if it is done in good faith, represents a reasonable business decision, and does not result in a subversion or weakening of the bargaining unit." *Id.* The plaintiff's own argument therefore unequivocally referred to the arbitral history. The Court notes that Arbitrator Massey reviewed six different arbitration decisions between the two parties, of which four were in favor of the plaintiff. *Id*. at 11-16. The plaintiff now implies that consideration of these prior decisions to be improper. It would seem that the plaintiff merely disagrees with Arbitrator Massey and her decision. The Court holds that Arbitrator Massey did not exceed her authority in considering this history as relevant to the collective bargaining agreements.

In a related argument, the plaintiff also contends that Arbitrator Massey exceeded her jurisdiction by deciding that there were limits to the right of the plaintiff to the design of jobs and to subcontract work in view of bargaining relationships between the plaintiff and the defendants. (Rec. Doc. 33, at 16-17). Clearly, Arbitrator Massey discussed job design and subcontracting with a view to the facts of the current dispute. The Court notes that as a result of the plaintiff's conversion from metal cans to plastic cans, capper operators could no longer perform tasks other than cap dumping. Bench Book Joint Exhibit "A" at 2-3. Arbitrator Massey simply discussed how this conversion from metal cans to plastic cans affected job design, and took this as a relevant factor in the context of the arbitral history. Arbitrator Massey was discussing whether the decision to subcontract violated the 2002-2005 CBA, with no view to setting firm parameters

to a right of job design or the subcontracting of work.

Also, Arbitrator Massey did not discuss whether the plaintiff had the discrete right to subcontract *per se*, but instead whether the planitiff's decision to subcontract in this instance constitutes a violation of the 2002-2005 CBA. While Arbitrator Massey does assert that the subcontracting language cannot be "construed as a 'carte blanche' to subcontract any or all work as Management determines", on the other hand she does not hold that the plaintiff can *never* subcontract either. Bench Book Joint Exhibit "A" at 10-17. She recognizes various instances of subcontracting that have been found to not violate the collective bargaining agreement. *Id.* Consequently, Arbitrator Massey did not decide whether the right to subcontract in the Management Rights Clause (Article XIII) was expressly modified or expressly given up in any other terms of the 2002-2005 CBA. The Court therefore holds that Arbitrator Massey did not make rulings outside the jurisdiction conferred upon her in the stipulated issue submitted by the parties.

No less important than the issues of whether the arbitrator exceeded her authority and jurisdiction are the issues of whether the arbitrator's decision "draws its essence from the collective bargaining agreement" and whether the arbitrator is not fashioning "his own brand of industrial justice."

> The Fifth Circuit has defined an award that "draws its essence" from the contract as one that has a basis that is at least rationally inferable in some logical way, if not obviously drawn, from the letter or purpose of the collective bargaining agreement. *Houston Power & Lighting Co.*, 71 F.3d at 183; *International Chemical Workers Union v. Day & Zimmermann, Inc.*, 791 F.2d 366, 369 (5th Cir. 1986), cert. denied, 479 U.S. 884, 107 S. Ct. 274, 93 L. Ed. 2d 250 (1986). Only when an arbitrator's words manifest an infidelity to this obligation may the court refuse to enforce the award. *Enterprise Wheel & Gas Corp.*, 363 U.S. at 597, 80 S. Ct. at 1361. Reasonable doubts are resolved in favor of enforcing the award. *Johnson Controls, Inc. v. United Association of Journeymen and Apprentices of Plumbing and Pipe*, 39 F.3d 821, 824 (7th Cir. 1994) (citing *Polk Bros. v. Chicago Truck Drivers Union*, 973 F.2d 593, 596 (7th Cir. 1992)), cert. denied, 115 S.

Ct. 1957 (1995). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco , Inc.*, 484 U.S. 29, 108 S. Ct. 364, 371, 98 L. Ed. 2d 286 (1987).

*National Gypsum Company v. Oil, Chemical, & Atomic Workers International Union*, 1997 U.S. Dist. LEXIS 8929 at *6 (E.D. La. Jun. 24, 1992).

At the heart of this dispute is Article XIII of the 2002-2005 CBA, which reads as follows:

> ARTICLE XIII. MANAGEMENT RIGHTS
> Section 1. The Company shall continue to have all the rights which it had prior to the employees' selection of the Union as the collective bargaining agent, except those that are specifically given up or modified by the express written terms of the Agreement. Included in the rights reserved to the Company except where they are given up or modified by any of the express written provisions of this Agreement (this enumeration being by way of illustration and not by way of limitation), are...the determination of the nature and extent of work, if any, to be contracted or transferred out and the persons, means and methods to be so utilized.

Bench Book Joint Exhibit "B" at 16-17. Arbitrator Massey indicated in her arbitration award that Article XIII would be the contractual basis for her findings, but that she would also look to the history between the plaintiff and the defendants "which incorporate basic contractual interpretation standards for evaluating the situation at hand." Bench Book Joint Exhibit "A" at 11. Arbitrator Massey therefore found that the plaintiff had "acted in good faith and was responding to the business challenges" and that "the decision to subcontract the cap dumping work was made as a result of the convergence of several factors that were not necessarily anticipated." *Id.* at 17-18.

However, Arbitrator Massey found that the subcontracting of the cap dumping work was a violation of the 2002-2005 CBA because of its permanent impact or erosion of the bargaining unit. *Id*. She cites one arbitral decision by Arbitrator Nicholas, where he stated "...for it has long since been settled that no employer shall take action which serves to erode and/or diminish the

strength of the recognized bargaining unit." *Id.* Arbitrator Massey indicated that the other five arbitral decisions uniformly noted this same principle. *Id.* Arbitrator Massey reasoned that while Article XIII is the contractual basis of her findings, arbitral history provides the "basic contractual interpretation standards for evaluating the situation at hand." *Id.* at 11. The Court finds that Arbitrator Massey's decision was rationally inferable in a logical way from the letter or purpose of the collective bargaining agreement, and thereby "draw its essence from the contract." The Court also finds that Arbitrator Massey did not fashion her own brand of industrial justice, as she looked to a total of six arbitration awards that have dealt with subcontracting at the plaintiff's New Orleans facility.

The plaintiff argues that the Fifth Circuit's decision in *Beaird Industries, Inc. v. Local 2297, International Union*, 404 F.3d 942 (5th Cir. 2005) is dispositive. The Court does not agree. The arbitrator in *Beaird* had determined that the employer's decision to subcontract was a violation of the collective bargaining agreement. *Id.* at 946. The *Beaird* court reasoned that the arbitrator had not pointed to any provision that limits the subcontracting right, and that the arbitrator had expressly recognized that the collective bargaining agreement was unambiguous on the employer's right to subcontract. *Id.* The *Beaird* court therefore concluded that the arbitrator's decision was not rationally inferrable in some logical way from the collective bargaining agreement. *Id.* Here, the subcontracting right was modified in the contract by consideration of the overall terms of the Agreement.

On the other hand, the defendants point to *Folger Coffee Co. v. International Union, United Automobile*, 905 F.2d 108 (5th Cir. 1990) ("*Folger I*"), which involved in essence the same collective bargaining agreement as here. The Fifth Circuit recognized in *Folger I* that the language of the collective bargaining agreement, including language that encompasses the

subcontracting of employees, set a limitation on the employer's right to subcontract. *Id.* at 111.

The *Folger I* court further stated that:

> "the arbitration panel was entitled to study the other provisions of the agreement, as well as consider other information, such as past practice, which was an integral element in the clause, the continued strength of the bargaining unit, and the company's reasonable business needs."

*Id.* Continuing, the Fifth Circuit stated that "arbitrators need not explicitly state that they find a clause ambiguous; nor would they lack the power, as courts frequently do, to construe and apply perfectly unambiguous terms of a contract." *Id.* The Fifth Circuit repeated this principle in *Resolution Performance Products, LLC v. Paper Allied Industrial Chemical and Energy Workers International Union*, 480 F.3d 760, 765 (5th Cir. 2007), and stated that "unless the agreement contained an explicit clause entitling the company to subcontract regardless of the effect on the bargaining unit, subcontracting should be balanced against the rights of the union." The Court notes that the Fifth Circuit in *Resolution Performance Products, LLC* distinguished *Beaird* from *Folger I*, and reasoned that the employer's collective bargaining agreement in *Beaird* included an unambiguous right to subcontract, whereas the employer's collective bargaining agreement in *Folger I* did not. *Id.* at 767.

The Court concludes that *Beaird* does not control in the instant case. Arbitrator Massey reasonably determined that the plaintiff did not have a "carte blanche" right to subcontract any or all work, thereby concluding that the 2002-2005 CBA was not unambiguous on the plaintiff's right to subcontract. Therefore the Court finds that it is reasonable for Arbitrator Massey to consider other factors in balance to determine whether the plaintiff's decision to subcontract violated the 2002-2005 CBA.

The Court is mindful that its role is a limited one in light of the strong national policy

favoring arbitration of labor disputes as a means of promoting harmony in labor-management relations and peaceful settlement of labor disputes. *American Manufacturing Co.*, 363 U.S. at 566-67; *Warrior & Gulf Navigation Co.*, 363 U.S. at 578; *Enterprise Wheel & Gas Corp.*, 363 U.S. at 596-97. Also, the Court notes that it is "not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Garvey*, 532 U.S. at 509. Therefore, the Court finds that Arbitrator Massey's award should not be vacated.

Lastly, the defendants have counterclaimed that the plaintiff's complaint is "spurious, unfounded in fact, legally lacking in validity, and is filed solely to avoid complying with Arbitrator Massey's award." (Rec. Doc. 15). The defendants argue that the plaintiff violated Rule 11 of the Federal Rules of Civil Procedure and that they, the defendants, are thereby entitled to an award of attorneys' fees and costs in defending the plaintiff's suit and in enforcing the arbitral award. *Id*. The Court does not agree. The plaintiff's complaint contains allegations and arguments supported by a rational interpretation of the facts and the law, as is evident from the discussion of the facts and the law above. The Court finds that the plaintiff's complaint was made in good faith and is not spurious. Therefore, the Court denies the defendants' request for attorneys' fees and costs in defending the plaintiff's suit and in enforcing the arbitral award.

IT IS ORDERED that judgment be entered against the plaintiff and in favor of the defendants.

IT IS FURTHER ORDERED that the plaintiff's motion in limine to strike the defendants' Exhibit "D" is DENIED. (Rec. Doc. 35).

IT IS FURTHER ORDERED that the defendants' request for attorneys' fees and costs in defending the plaintiff's suit and in enforcing the arbitral award is DENIED. (Rec. Doc. 15).

New Orleans, Louisiana, this 14th day of April, 2009.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　HELEN G. BERRIGAN
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE